James K. Schultz, Esq. (SBN 309945)
Debbie P. Kirkpatrick, Esq. (SBN 207112)
SESSIONS, ISRAEL & SHARTLE, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
Tel: 619/758-1891
Fax: 877/334-0661
jschultz@sessions.legal
dkirkpatrick@sessions.legal

Attorneys for Plaintiff Viva Naturals, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVA NATURALS, INC., | ) Case No. 2:20-CV-03107-RGK-AFM <br> ) <br> ) **MEMORANDUM OF POINTS AND** <br> ) **AUTHORITIES IN SUPPORT OF** <br> ) **MOTION FOR SUMMARY** <br> ) **JUDGMENT** <br> ) <br> ) Hearing Date: July 12, 2021 <br> ) Hearing Time: 9:00 a.m. <br> ) <br> ) Final Pretrial Conf.: August 9, 2021 <br> ) Trial Date: August 24, 2021 <br> ) <br> ) [Concurrently filed with: (1) Notice of <br> ) Motion; (2) Separate Statement of <br> ) Uncontroverted Facts and Conclusions <br> ) of Law; (3) Declaration of James <br> ) Schultz; and (4) Proposed Judgment] <br> ) |
| Plaintiff | |
| vs. | |
| LIEF ORGANICS, LLC, | |
| Defendant | |
| _____ | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The material facts underlying this motion for summary judgment are uncontrovertible. There are no genuine issues to be tried. Nor can there be, since Defendant has admitted every material fact proving Plaintiff's case and Defendant cannot undermine those admissions or provide any information in opposition to the motion, because it has failed to produce one single shred of documentation during discovery. Plaintiff is entitled to (i) damages of $309,384 resulting from Defendant's breach of contract, breach of warranty, and negligence, as well as (ii) a dismissal with prejudice of Defendant's Counterclaim.

## II. FACTUAL BACKGROUND

Plaintiff is engaged in the business of developing and selling dietary supplement products. Statement of Uncontroverted Facts and Conclusions of Law ("UF") No. 1. Defendant purports to be a full-service cGMP (Current Good Manufacturing Practices) manufacturer of dietary supplements. UF No. 2.

In 2017, Defendant entered into an agreement with Plaintiff by which Defendant would manufacture flavored multi-source collagen powder products (the "Product") for Plaintiff. UF No. 3. Defendant further warranted to Plaintiff that the Product would be of merchantable quality. UF No. 4.

The Product's specification required that the granular form of chicken collagen be used in its manufacturing, not the powdered form. UF No. 5. Defendant knew that there were two forms of chicken collagen and that only the granular form was to be used in the Product's manufacture. UF No. 6.

However, Defendant used the incorrect form of chicken collagen and manufactured the Product using the powder form of the chicken collagen, or a mix of the powder and granular chicken collagen rather than the granular form, and admitted so in writing. UF No. 7. Defendant did not note a deviation with the Plaintiff's specifications pursuant cGMP requirements under 21 C.F.R. § 111.70, which requires manufacturers to comply with ingredient identity specifications. UF No. 8. As a result, $74,445 worth of Product was not saleable because the Product was not produced in accordance with Plaintiff's specifications. UF No. 9.

In the course of their relationship, Plaintiff sent raw ingredients, packaging labels, and other materials directly to Defendant. UF No. 10. Defendant was responsible for managing the inventory provided by Plaintiff in exchange for a fee. UF No. 11. Yet Defendant has failed to account for $31,677 of the Plaintiff's inventory. UF No. 12. In addition, Defendant is holding $203,262 of Plaintiff's inventory, excluding the $74,445 value of the Product and the missing inventory of $31,677, to which Defendant has not given Plaintiff access or released, despite Plaintiff's requests and demands. UF No. 13.

Therefore, in total, Plaintiff has suffered damages of $309,384. UF No. 14.[1] These damages are based on Defendant's admissions. *Id*.

Defendant has not presented any evidence pertaining to (i) Defendant's compliance with cGMP requirements in manufacturing, storing and distributing the Plaintiff's products; (ii) any steps taken by the Defendant to manufacture the Product in accordance with Plaintiff's specifications; or (iii) how the Plaintiff's inventory was tracked or managed. UF No. 15. Nor has Defendant produced any evidence supporting its allegations pertaining to (i) misconduct by Plaintiff, or (ii) what damages were suffered by Defendant or how those damages are to be calculated in support of Defendant's counterclaim. UF No. 16.

In sum, the material facts upon which this motion is based are admitted, and despite Plaintiff's requests during discovery, Defendant has provided no evidence – either in the form of documentation or witnesses – that would or could undercut Plaintiff's case or Defendant's admissions, much less lend any support for the Counterclaims or Affirmative Defenses.

## III. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[1] To the extent the Court denies this motion and the matter proceeds to trial, Plaintiff intends to seek further damages relating to lost sales, lost profits, and other damages. The judgment sought on this motion is limited to the amount admitted by Defendant.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). Put differently, "[t]he district court should grant summary judgment where the only reasonable conclusion to be drawn from the record supports the moving party." *Gregory v. United States*, 178 F.3d 1294 (6th Cir. 1999); *Miksad v. Dialog Info. Servs., Inc.*, 900 F.2d 263 (9th Cir. 1990). Once the moving party has met this standard, the burden shifts to the party opposing summary judgment to demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The opposing party must do so with specific facts. *Matsushita*, 475 U.S. at 586.

## IV. THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

All of the material facts on this motion have been admitted by the Defendant. *See* Declaration of James K. Schultz ("Schultz Decl.") at ¶¶ 5-7. The Defendant will not be able to demonstrate a genuine issue of any material fact for trial by virtue of these admissions. "Failure to timely respond to requests for admissions results in automatic admission of the matters requested." *FTC v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal 2002). "No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing." *Id*. Once facts are deemed admitted, the Court may properly

rely on them as a basis for entry of summary judgment. *See Layton v. International Ass'n of Machinists and Aerospace Workers*, 285 Fed. Appx. 340, *341 (9th Cir. 2008); *see also Conlon v. U.S.*, 474 F.3d 616, *621 (9th Cir. 2007) ("Unanswered requests for admissions may be relied on as the basis for granting summary judgment").

Defendant will also be unable to provide any information in opposing this motion, as it has not provided any documents during discovery and never propounded any discovery requests on Plaintiff before the discovery deadline expired. Schultz Decl. ¶¶ 7-8. When a non-movant on summary judgment fails to provide information as required during discovery, the party is not allowed to use that information "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court may not consider information submitted in opposition to a summary judgment motion if such information was not disclosed prior to the discovery deadline. *See, e.g., Weinberg v. Whatcom County*, 241 F.3d 746, *750-751 (9th Cir. 2001); *Ruiz v. Walmart Inc.*, 2021 WL 948815, *4 (C.D. Cal. 2021). Here, the Court has already found that there was no good cause to extend the discovery deadline, underscoring that Defendant's failure to substantively engage in discovery, much less produce a shred of documentation requested by the Plaintiff, has been unjustified and

allowing the use of previously unproduced information would undoubtedly be unduly prejudicial to Plaintiff.  ECF No. 40.

The Amended Complaint contains three counts against the Defendant: Breach of Contract (Count One), Breach of Warranty (Count Two), and Negligence (Count Three).  There are two aspects to these claims.  The first relates to Defendant's manufacturing of the Product, by which Defendant breached its contract and warranty of merchantability and was negligent.  The second relates to the wrongful storing and withholding of Plaintiff's inventory, constituting breach of contract and negligence.

### A. Defendant's Manufacturing of Product

#### 1. Breaches of Contract and Warranty

In order to prevail in an action for breach of contract, a plaintiff must prove: (1) the existence of a valid contract between the parties; (2) plaintiff's performance or excuse of nonperformance[2]; (3) the defendant's breach; and (4) resulting damages to plaintiff.  *Reichert v. Gen, Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).  Furthermore, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the

---

[2] There is no dispute as to Plaintiff's performance under the parties' agreement.  Indeed, Defendant has not produced any evidence supporting its allegations pertaining to alleged misconduct by the Plaintiff or what damages were suffered by the Defendant or how those damages are to be calculated.  UF No. 16.

bargain creates an express warranty that the goods shall conform to the affirmation or promise." California Commercial Code § 2313(1)(a).

With respect to the manufacturing of the Product, the contract between the parties is clear and admitted by Defendant, as is the warranty made by Defendant. Plaintiff is engaged in the business of developing and selling dietary supplement products and Defendant purports to be a full-service cGMP manufacturer of dietary supplements. UF Nos. 1 and 2. The parties entered into an agreement for the manufacture of the Product, which Defendant warranted would be of merchantable quality. UF Nos. 3 and 4. Defendant knew there were two forms of chicken collagen and that only the granular form was to be used in the Product's manufacture. UF No. 6. The specification for the Product required that only the granular form of chicken collagen be used in manufacturing of the Product, and not the powdered form of chicken collagen or a mix of the two. UF No. 5.

The Defendant's breach of the contract and warranty is also admitted by Defendant and straightforward. It is undisputed that Defendant used the incorrect form of chicken collagen and manufactured the Product using the powder form of the chicken collagen, or a mix of the powder and granular chicken collagen rather than the granular form, and admitted so in writing. UF No. 7. Defendant did not note a deviation with the Plaintiff's specifications pursuant cGMP requirements under 21 C.F.R. § 111.70, which requires manufacturers to comply with

ingredient identity specifications. UF No. 8. In fact, Defendant never provided any information during discovery pertaining to its compliance with cGMP requirements in manufacturing Plaintiff's products or any steps taken by the Defendant to manufacture the Product in accordance with Plaintiff's specifications. UF No. 15.

Finally, the resulting damages stemming from Defendant's breaches of contract and warranty are also uncontested. Defendant has admitted that $74,445 worth of Product was not saleable because the Product was not produced in accordance with Plaintiff's specifications. UF No. 9.

With respect to Plaintiff's inventory, the parties had an agreement that Plaintiff would send raw ingredients, packaging labels, and other materials directly to Defendant. UF No. 10. Defendant was responsible for managing the inventory provided by Plaintiff in exchange for a fee. UF No. 11. Defendant mismanaged that inventory and breached its agreement with Plaintiff in two ways. First, Defendant has failed to account for $31,677 of the Plaintiff's inventory. UF No. 12. Second, Defendant has continued holding $203,262 of Plaintiff's inventory, despite Plaintiff's requests and demands. UF No. 13. Defendant has not even presented any evidence pertaining to how the Plaintiff's inventory was stored, tracked, managed or distributed. UF No. 15.

In total and to date, Plaintiff has suffered damages of $309,384 as a result of Defendant's breaches of contract and warranty. UF No. 14.

### 2. Negligence

In order to prevail in an action for negligence, a plaintiff must prove: (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; and (3) the breach proximally and legally caused injury to the plaintiff. *Coleman v. Medtronic, Inc.,* 223 Cal. App. 4th 413 (Cal. Ct. App. 2014).

As a manufacturer of the Product, Defendant owed a legal duty of care to Plaintiff to manufacture the Product in accordance with Plaintiff's specifications making clear that only the granular form of chicken collagen be used in manufacturing of the Product, and not the powdered form. UF Nos. 1-5; *Reynolds v. Natural Gas Equipment*, 184 Cal. App. 2d 724, 736. (1960) (manufacturer's duty of care "requires reasonable care to be exercised in assembling component parts and inspecting and testing them before the product leaves the plant"). Defendant has admitted that it breached that duty by manufacturing the Product using the powder form of the chicken collagen, or a mix of the powder and granular chicken collagen. UF No. 7. Notably, Defendant did not note a deviation with the Plaintiff's specifications pursuant cGMP requirements under 21 C.F.R. § 111.70, which requires manufacturers to comply with ingredient identity specifications; Defendant never even provided any information whatsoever during

discovery pertaining to its compliance with cGMP requirements in manufacturing Plaintiff's products or any steps taken by the Defendant to manufacture the Product in accordance with Plaintiff's specifications. UF Nos. 8 and 15.[3]

Defendant's breach proximally and legally caused damages to Plaintiff, as Defendant has admitted that $74,445 worth of Product was not saleable because the Product was not produced in accordance with Plaintiff's specifications. UF No. 9.

Defendant also owed a legal duty of care to Plaintiff with respect to its managing of inventory Plaintiff had shipped to Defendant for use in manufacturing. *See, e.g., Crystal Ice & Cold Storage Co. v. Renschler Produce Co.*, 99 Cal. App. 417 (1929) (warehouse obligated to use ordinary care in maintaining inventory). Defendant breached that duty by failing to account for $31,677 of the Plaintiff's inventory and continued holding $203,262 of Plaintiff's inventory. UF Nos. 12 and 13. Defendant has not even tried to produce any evidence pertaining to how the Plaintiff's inventory was stored, tracked, managed or distributed, rendering it defenseless against a claim for negligence. UF No. 15.

The total damages proximally and legally caused by Defendant as a result of its negligence is $309,384. UF No. 14.

---

[3] A federal statute or regulation may be adopted as a standard of care, the breach of which gives rise to a presumption of negligence. *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App. 3d 318, 336 (1991); *Toole v. Richardson-Merrell Inc.*, 251 Cal. App. 2d 689, 703-704 (1967).

## V. **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for summary judgment in its favor, grant damages of $309,384 in Plaintiff's favor, and dismiss Defendant's Counterclaim with prejudice.

Dated: June 10, 2021            Respectfully submitted,

SESSIONS, ISRAEL & SHARTLE, L.L.P.

*/s/James K. Schultz*
James K. Schultz
Debbie P. Kirkpatrick
Attorneys for Plaintiff Viva Naturals, Inc.