WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
402 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

Attorneys for Defendant and Counter-Claimant
LIEF ORGANICS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Viva Naturals, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Lief Organics, LLC, <br><br> Defendant. <br><br> And Related Counterclaims. | Case No. 2:20-cv-03107-RGK-AFM <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO VIVA NATURALS, INC.'S MOTION FOR SUMMARY JUDGMENT** <br><br> First Amended Complaint Filed: June 17, 2020 <br><br> District Judge: Hon. R. Gary Klausner <br> Courtroom: 850, 8th Floor <br><br> Magistrate Judge: Hon. Alexander F. MacKinnon <br> Courtroom: #780, 7th Floor <br><br> Hearing Date: July 12, 2021 <br> Hearing Time: 9:00 a.m. <br><br> Trial Date: August 24, 2021 |

Case No. 2:20-cv-03107-RGK-AFM
LIEF ORGANICS, LLC'S MEMORANDUM OF PTS & AUTH. IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ......................................................................... 3

III. ARGUMENT .................................................................................................. 5

    A.    Viva Did Not Meet and Confer With Lief Before Filing Its Motion for Summary Judgment in Violation of the Local Rules. ......... 5

    B.    Viva Claims Fail Because The FDA Has Exclusive Jurisdiction To Determine Whether A Dietary Supplement Is Adulterated ............. 7

    C.    The Requests For Admissions Should Be Disregarded or Withdrawn. ................................................................................................ 9

    D.    Viva's Claims Fail as a Matter of Law Because it Has Not Established the Facts to Seek Summary Judgment Even if the RFAs are Deemed Admitted. .............................................................. 11

        1.    Breach of Contract ................................................................... 11

        2.    Viva Is Not Entitled to Summary Judgment For Breach Of Warranty. ............................................................................. 14

        3.    Viva's Negligence Claim Is Barred by the Economic Loss Rule. ................................................................................. 15

        4.    Viva's Attempt to Obtain Summary Judgment on Lief's Two Counterclaims Should Fail ............................................... 16

IV. CONCLUSION ............................................................................................ 16

## TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Amarin Pharma, Inc. v. Int'l Trade Comm'n*,
   923 F.3d 959 (Fed. Cir.), *cert. denied*, 140 S. Ct. 642 (2019) .............................. 8

*Apollo Grp. Inc. v. Avnet, Inc.*,
   58 F.3d 477 (9th Cir. 1995) .................................................................................. 14

*Arena Restaurant and Lounge LLC v. Southern Glazer's Wine and Spirits, LLC*,
   2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ...................................................... 15

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ................................................................................................ 8

*County of Kern v. Tyler Techs., Inc.*,
   2021 WL 369588 (E.D. Cal. Feb. 3, 2021) .......................................................... 15

*Mardiros v. City of Hope*,
   Case No. 2:19-cv-2196-MSC-MAA (C.D. Cal., Jan. 22, 2021) ....................... 5, 6

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
   2009 WL 2084154 (N.D. Cal. July 13, 2009) ...................................................... 15

*Patriot Sci. Corp. v. Korodi*,
   504 F. Supp. 2d 952 (S.D. Cal. 2007) .................................................................. 15

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) .................................................................................. 8

*POM Wonderful LLC v. Coca-Cola Co.*,
   573 U.S. 102 (2014) ................................................................................................ 8

*Singer v. Live Nation Worldwide, Inc.*,
   Case No. 11-cv-427-DOC/MLGx, 2012 U.S. Dist. LEXIS 5196 (C.D. Cal. Jan. 13, 2012) ........................................................................................... 5

*Skidmore v. Led Zeppelin*,
   Case No. 15-3462-RGK/AGRx, 2016 WL 1442461 (C.D. Cal., Apr. 8, 2016) ................................................................................................................. 9, 10

*Tantaros v. Fox News Channel, LLC*,
   427 F. Supp. 3d 488 (S.D.N.Y. 2019) .................................................................... 9

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
   660 F.Supp.2d 1163 (C.D. Cal. 2009) ................................................................. 15

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal.4th 503 (1994) ........................................................................................... 15

*Erlich v. Menezes*,
   21 Cal.4th 543 (1999) ......................................................................................... 15

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal.4th 979 (2004) ......................................................................................... 15

**Federal Statutes**

21 United States Code section 301 ........................................................................... 7

21 United States Code section 337 ........................................................................... 8

21 United States Code section 342 ........................................................................... 7

21 United States Code section 343 ......................................................................... 13

21 United States Code section 393 ........................................................................... 7

Dietary Supplement Health and Education Act, Pub. L. No. 103-417, § 4,
   108 Stat. 4325 (1994) ............................................................................................ 7

Food, Drug, and Cosmetic Act,
   Pub. L. No. 75-717, 52 Stat. 1040 (1938) ............................................... 2, 7, 9, 13

**Rules**

Federal Rule of Civil Procedure 36 ............................................................... 1, 9, 11

United States District Court, Central District of California Local Rule 7-3 ..... 1, 5, 6

**Regulations**

21 Code of Federal Regulations Part 101 ............................................................... 13

21 Code of Federal Regulations Part 111 ............................................................... 11

21 Code of Federal Regulations section 111.70 ..................................................... 11

Defendant/Counterclaimant Plaintiff, Lief Organics, LLC ("Lief"), submits this memorandum in support of its opposition to the motion for summary judgment filed by Plaintiff/Counter-defendant, Viva Naturals, Inc. ("Viva") and asks the Court to deny the motion.

## I. INTRODUCTION

Viva's motion, a transparent and strained attempt to "strengthen" its settlement posture 24 hours before a scheduled mediation and in the waning hours of the Court's motion deadline, not only violates the Central District's Local Rules, but is based on a contrived set of facts and circumstances to avoid the Court's upcoming pretrial requirements and ultimate trial in this matter. In its haste to file something in the eleventh hour, Viva's motion fails to even move to dismiss all of the case, leaving at least one of Lief's counterclaims untouched.

Both parties admittedly did very little discovery in this case and instead, tried to focus on resolving the dispute. Counsel for the parties discussing settlement agreed that motion practice was unnecessary and a waste of resources. Unfortunately, the prior civility in trying to settle a case that should settle was abandoned in favor of posturing. This Court should deny Viva's motion for summary judgment for several reasons.

First, Viva chose to ignore this Court's rules, procedures, and civility guidelines in filing its motion. Counsel of record for Viva did not initiate or attempt to conduct a meet and confer as required under Local Rule 7-3. In fact, no meet and confer about any motion was ever discussed between counsel of record.

Second, Viva largely bases its Statement of Uncontroverted Facts and Conclusions of Law on a set of Requests for Admission ("the RFAs") that Viva now argues are deemed admitted. The Court should disregard these or permit leave for withdrawal of the RFAs under Rule 36(b) of the Federal Rules of Civil Procedure. Lief did not respond to the RFAs because the parties were engaged in

ongoing settlement discussions, had agreed to significant limitations on the scope of discovery, and had an understanding on production of responses and more documents if the case did not settle during mediation. In fact, Viva chose not to move to compel any discovery and Lief never refused to provide responsive discovery. Viva simply sprung its motion for summary judgment on Lief, 24 hours before the parties' scheduled mediation conference. Viva's tactical bait-and-switch should not result in the RFAs being deemed admitted for Viva's benefit, particularly given that they are directly contradicted by Lief's denials and allegations in its Amended Answer and Counterclaims filed over 11 months ago, along with other facts.

Third, even if the RFAs are deemed admitted for purposes of Viva's motion, they – along with Viva's other alleged and unsupported facts – fail to establish Viva's claims and defeat Lief's two counterclaims. Viva's underlying allegations based on the violations of Federal Food, Drug, and Cosmetic Act rely upon incorrect regulations as to Lief's obligations (both factually and legally) and cannot form the basis of Viva's adulteration allegations. Viva, not Lief, chose to be legally obligated to establish proper specifications related to the chicken type II collagen ingredient and finished product at issue. It admits as much in its First Amended Complaint ("FAC") at ¶ 14 (Dkt. No. 9). The specifications that Viva established allowed for the use of both powder and granule forms of chicken type II collagen. Though Viva disingenuously alleges that Lief's use of powder chicken type II collagen resulted in an adulterated product, omitting the fact that Viva sourced, purchased and supplied the ingredient through its chosen third-party supplier. Consequently, Viva has not and cannot establish its breach claims that rely on allegations of adulteration of chicken type II collagen.

Fourth, Viva's claims for breach of warranty (Count Two) and negligence (Count Three) fail as a matter of law. The breach of warranty claim is premised

on the merchantability of the manufacturing services that Lief was to provide for Viva. However, merchantability applies only to products and not services, thereby making this claim a fallacy. Viva's negligence claim also fails because it is barred by the economic loss rule. Accordingly, the Court should deny Viva's motion because all three of Viva's claims fail as a matter of law, or because there are genuine disputes of material fact.

Finally, Viva attempts to bootstrap Lief's two counterclaims, breach of contract and account stated, into its last-minute motion for summary judgment. Its motion only seeks summary judgment on "Defendant's Counterclaim" and does not identify which one it seeks to have the Court address. It cannot make new arguments or seek broader relief in its reply brief.

The Court should deny Viva's motion for summary judgment.

## II. FACTUAL BACKGROUND

Lief is a premier innovator and full-service Current Good Manufacturing Practices ("cGMP") manufacturer of dietary supplements. Lief formulates and manufactures dietary supplements such as powders, tablets, and capsules for other companies. First Amended Complaint ("FAC") ¶ 13 (Dkt. No. 9); Answer to FAC and Counterclaims ("Answer" or "Counterclaim") ¶ 13 (Dkt. No. 23). Lief is a California limited liability company with its principal place of business in Valencia, California. FAC ¶¶ 2, 6; Answer ¶¶ 2, 6.

Viva, a Canadian corporation with a principal place of business in Ontario, develops and sells dietary supplements. FAC ¶¶ 1, 7, 12; Answer ¶¶ 1, 7, 12.

Viva alleged – and Lief admitted that: "The business relationship between the Plaintiff and the Defendant began in 2017. In general, the Plaintiff provided the Defendant with raw ingredients and packaging to manufacture collagen-containing products for Plaintiff according to Plaintiff's specifications, and Defendant would manufacture such products for the Plaintiff in exchange for a fee." FAC ¶ 14; Answer ¶ 14. While there is no written contract executed by any

party, Lief understood it would provide its services to manufacture multi-source collagen capsules and flavored multi-source collagen powder products for Viva. Declaration of Kevin Bell ("Bell Decl."), Exs. 1-3, Counterclaim, Exs. A-C. Viva's own New Product Request for Quote sheet did not specify granule or powder material, but only stated that Chicken Collagen for use as an ingredient would be sourced from "Semnl Biotechnology." Bell Decl., Exs. 1 and 3, Counterclaim Exs. A and C. Moreover, Viva agreed to provide the chicken type II collagen ingredient to Lief for use in manufacturing the products via its supplier, Hainan Semnl Biotechnology Co., Ltd. ("Semnl Biotechnology"). *Id*.

The specification provided by Viva from Semnl Biotechnology established that the chicken type II collagen would meet the specification in both the "Powder or Granule" form. Bell Decl., Ex. 1; Counterclaim, Ex. A at 009.

In April 2018, Lief received the chicken type II collagen ingredient from Semnl Biotechnology. Lief created one code for the chicken type II collagen ingredient based on the specification set by Viva, which expressly allowed for the use of both the powder and granule form of chicken type II collagen to be used in the manufacture of Viva's collagen-containing products. It is undisputed that Semnl Biotechnology delivered both powder and granule forms of chicken type II collagen to Lief to use in manufacturing products for Viva. Bell Decl., Exs. 1-4; Counterclaim, Exs. A-C.

Thereafter, Viva submitted purchase orders to Lief for products in October 2017, June 2018, and July 2018. Bell Decl., Ex. 2, Counterclaim, Ex. B. These purchase orders did not alter Viva's previously established specification for chicken type II collagen by further specifying whether a particular form of chicken material, granule or powder, should be used by Lief.

In January 2019, Lief discovered that the shipment of chicken type II collagen from Semnl Biotechnology contained two different forms of chicken collagen raw material, granule and powder. Both forms of chicken type II collagen were sent by Semnl Biotechnology on the same pallet and were not segregated from each other

Lief confirmed with Viva that two different forms of chicken type II collagen were sent and then manually separated and counted the material and created an additional code to differentiate between the two forms per Viva's request. Bell Decl., Exs. 5-6. Lief properly followed cGMP standards and manufactured all of Viva's products within the specifications set by Viva and with the chicken type II collagen sourced by Viva. *Id.* Powder and granular chicken collagen are chemically identical. Bell Decl., Exs. 5 at pg. 1; 6 at pg. 1.

As for Lief's counterclaims, Viva disputes the facts surrounding its obligations to pay outstanding invoices to Lief as well as storage fees incurred by Viva for storing its finished and unfinished inventory.

### III. ARGUMENT

#### A. Viva Did Not Meet and Confer With Lief Before Filing Its Motion for Summary Judgment in Violation of the Local Rules.

Local Rule 7-3 mandates that counsel of record meet and confer before the filing of **any** motion. This Court has properly dismissed summary judgment motions on this basis alone for violation of the local rules. *Mardiros v. City of Hope*, Case No. 2:19-cv-2196-MSC-MAA (C.D. Cal., Jan. 22, 2021). *Mardiros* cites cases finding the Court had authority to deny a motion, including summary judgment motions, for failure to meet and confer. *Id*. at 2 (citing *United States v. Kan-Di-Ki LLC*, Case No. 10-cv-965-JST/RZx, 2013 U.S. Dist. LEXIS 198258, at *1–2 (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002)); *Singer v. Live Nation Worldwide, Inc.*, Case No. 11-cv-427-DOC/MLGx, 2012 U.S. Dist. LEXIS 5196, at *3–5 (C.D. Cal. Jan. 13, 2012).

In *Mardiros*, the Court denied the summary judgment motion because of a failure to properly meet and confer. The Court reasoned that:

> Here, Defendant does not present a statement of compliance with the prefiling conference requirement, as required by the Local Rule. Although the record shows that the parties long have contemplated filing motions for summary judgment,

> the motion itself is devoid of any information showing that counsel discussed the issues in the motion thoroughly such that the briefing will be "directed to those substantive issues requiring resolution by the Court." Plaintiff's counsel states that no prefiling conference took place. This is apparent, for example, from Defendant's argument concerning Plaintiff's declaration of ownership claim, which Defendant notes is incompatible with Plaintiff's election to affirm the contract. This issue is one of many that the parties could narrow or eliminate in an adequate prefiling conference of counsel. *See Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-1409 AG (KESx), 2016 U.S. Dist. LEXIS 144380, at *5–6 (C.D. Cal. Oct. 17, 2016) ("Making two sides talk can significantly help focus and clarify disputes, even when one side still has to file a motion at the end of the day.").

*Mardiros*, *supra*, at 2.

Here, Viva chose not to meet and confer on its motion for summary judgment. In fact, Viva's counsel of record made no attempt to contact Lief's counsel of record to meet and confer. Declaration of Hubert Kim ¶ 2. In addition, Kevin Bell (counsel for Lief) and Kalman Magyar (counsel for Viva) engaged in significant telephone communications regarding matters involving the case. Bell Decl. ¶ 7. At no time prior to the filing of Viva's motion did Magyar discuss Viva's summary judgment motion with Bell. In fact, in more than one telephone conversation, Magyar and Bell discussed the fact that neither party would be taking depositions, retaining experts or filing motions, but rather, if the case was not promptly resolved, the parties would proceed to trial in August 2021 under the Court's current order. Bell Decl. ¶ 16. Assuming *arguendo* that Magyar and Bell would have met and conferred on Plaintiff's motion, neither are counsel of record.

Viva's motion represents to the Court that "[p]ursuant to Local Rule 7-3, this Motion is made following the conferences of counsel which took place telephonically on May 28 and June 3, 2021." Dkt. No. 41. However, those discussions never considered summary judgment and did not satisfy the formal requirements of Rule 7-3, requiring a meet and confer. Bell Decl. ¶ 17. Those telephone conferences related to ongoing settlement discussions and the upcoming scheduled mediation, not motion practice. *Id.*

Additionally, Viva's Notice of Motion and Motion asks that "Defendant's Counterclaim be dismissed with prejudice." Dkt. No. 41 at 2. Yet Lief's Answer and Counterclaim contains two counterclaims. Answer ¶¶ 21-34. As a result, Viva has failed to put Lief and this Court on notice of the relief that it seeks via its motion. Throughout this case, Viva has skirted the rules and civility requirements, and at times, has only met procedural requirements after this Court ordered it to do so. *See* Order to Show Case re Dismissal for Lack of Prosecution (Dkt. No. 13). Viva's actions and disregard for the Local Rules fly in the face of the civility duties proscribed by the Central District's rules. As such, the pending motion should be denied.

      **B.    Viva Claims Fail Because The FDA Has Exclusive Jurisdiction To Determine Whether A Dietary Supplement Is Adulterated.**

Plaintiff's motion should also be denied because the Food and Drug Administration ("FDA") has the exclusive jurisdiction to enforce the Food, Drug, and Cosmetic Act ("FDCA")[1] and Viva's case expressly depends on whether the dietary supplement products made by Lief are "adulterated" under 21 U.S.C. § 342(g)(1). FAC ¶¶ 20, 21, 24(a). But Congress charged the FDA to "protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). In 1994, the FDCA was further amended with the Dietary Supplement Health and Education Act ("DSHEA").[2] DSHEA established a new category of food products – dietary supplements – that have unique, comprehensive safety, labeling, manufacturing, and other related standards.

Section 342(g)(1) provides that: "If it is a dietary supplement and it has been prepared, packed, or held under conditions that do not meet current good

---

[1] Pub. L. No. 75-717, 52 Stat. 1040 (1938), as amended 21 U.S.C. §§ 301 *et seq.* (1998).

[2] Pub. L. No. 103-417, § 4, 108 Stat. 4325 (1994).

manufacturing practice regulations, including regulations requiring, when necessary, expiration date labeling, issued by the Secretary under subparagraph (2)."

The statutory scheme for making a determination that a dietary supplement is adulterated is left to the FDA. There is no private right of action to find a supplement product is adulterated. As relevant here, the FDCA authorizes the FDA to regulate dietary supplements. The FDCA provides the United States with "nearly exclusive enforcement authority." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014); *see also,* 21 U.S.C. § 337(a) ("Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions...."). Private parties may not bring suits to enforce the FDCA. *POM Wonderful, supra*, 573 U.S. at 109 (citing 21 U.S.C. § 337). Moreover, a complaint does not state a cognizable claim under the FDCA where that "claim is based on proving violations of the FDCA and where the FDA has not taken the position that the articles at issue do, indeed, violate the FDCA. Such claims are precluded by the FDCA." *Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 968 (Fed. Cir.), *cert. denied*, 140 S. Ct. 642 (2019); *see also, PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("Because the FDCA forbids private rights of action under that statute, a private action brought under the Lanham Act may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation.").

Viva's claims depend on showing that the products made by Lief were adulterated. The FDA establishes when a product labeled as a dietary supplement, such as Viva's, will be deemed adulterated. Every facet of the FAC is predicated on the allegation of adulteration and the success or failure of the claims turns on establishing

whether federal standards were met. *See, e.g.*, *Tantaros v. Fox News Channel, LLC*, 427 F. Supp. 3d 488, 494 (S.D.N.Y. 2019). As such, Viva cannot enforce the FDCA and its claims are barred.

### C. The Requests For Admissions Should Be Disregarded or Withdrawn.

Viva's summary judgment motion and statement of undisputed material facts relies almost entirely on Fed. R. Civ. P. 36(a)(3) for requests for admission that were propounded on Lief. Dkt. No. 41. Rule 36(a)(3) provides that: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." Lief respectfully requests that the admissions not be deemed to have been admitted. Lief also requests that the Court disregard or withdraw the admissions under Rule 36(b) of the Federal Rules of Civil Procedure.

This Court has ruled that:

> "A trial judge has discretion . . . to permit a late response to a request for admissions made pursuant to [Federal Rule of Civil Procedure 36], and thus relieve a party of apparent default." *Am. Gen. Life & Acc. Ins. Co. v. Findley*, No. CV 12-01753, 2013 WL 1120662, at *3 (C.D. Cal. Mar. 15, 2013). In determining whether to permit withdrawal or amendment of an admission, the court considers: (1) whether presentation of the merits will be subserved and (2) whether the non-moving party will suffer prejudice. *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

*Skidmore v. Led Zeppelin*, Case No. 15-3462-RGK/AGRx, 2016 WL 1442461, at *11 (C.D. Cal., Apr. 8, 2016).

Here, based on active settlement discussions between counsel for Lief and Viva that have been ongoing throughout the entire pendency of the case, Lief was under the impression that the parties were strenuously focusing efforts to work in good faith toward settlement. To that end, Viva granted open-ended extensions to respond to any outstanding discovery requests, including the RFAs, which is evidenced by its

decision not to move to compel any further responses or documents. Bell Decl. ¶ 14. Viva chose not to file any motion to compel seeking any discovery it believed was owed to it or to have the RFAs be deemed admitted.[3]

Allowing Viva to rely on the RFAs in support of summary judgment would both subserve the presentation of merits and cause Lief to suffer prejudice. The presentation of the merits is subserved when "upholding the admissions would practically eliminate any presentation of the merits of the case." *Skidmore*, *supra*, 2016 WL 1442461 at *12 (*quoting Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). Viva has hinged its Statement of Uncontroverted Facts and Conclusions of Law in Support of Summary Judgment Motion on the RFAs. *See* Dkt. No. 41-2. Yet the RFAs – even if treated as admitted – directly contradict Lief's denials in its Answer and Counterclaim. For example, Lief denied the allegations of Paragraph 20 of the First Amended Complaint (*See* Dkt. No. 23 at ¶ 23; Dkt. No. 9 at ¶ 20), though RFA No. 5 contains nearly identical language. Viva's haphazard prosecution of its case has created irreconcilable factual contradictions that cannot support summary judgment. Consequently, reliance on the RFAs could practically eliminate any presentation of the merits of the case.

Moreover, Viva will not be able to show that it would be prejudiced if Lief is permitted to now respond to the RFAs. Just as in *Skidmore*, Viva granted discovery extensions to Lief (including an opened ended extension for responding to the RFAs), never filed any motion to compel, sought no witness depositions, did not otherwise advance discovery in any meaningful way, and represented to Lief's counsel before the end of fact discovery that his client would not be filing a summary judgment motion. As such, Viva cannot demonstrate that it would be prejudiced if the RFAs are disregarded or withdrawn.

---

[3] Lief served responses to the RFAs on June 10, 2021. Bell Decl. ¶ 18 & Ex. 7. Lief supplemented its responses to Viva's requests for production of documents on June 21, 2021. Bell Decl. ¶ 19.

Accordingly, the Court should disregard Viva's arguments based on the alleged admissions in considering its dispositive motion, or permit leave to seek withdrawal of the admissions under Rule 36(b).

### D. Viva's Claims Fail as a Matter of Law Because it Has Not Established the Facts to Seek Summary Judgment Even if the RFAs are Deemed Admitted.

Even if the RFAs are deemed admitted, Viva's motion for summary judgment still fails because there are disputed genuine issues of material fact. Viva is not entitled to judgment as a matter of law because it does not adequately provide the facts necessary to establish Viva's claims for breach of contract, breach of warranty, or negligence. Viva's breach of warranty claim is barred because Viva bases this claim on alleged services, though this claim must be based on a sale of goods. Viva's negligence claim is barred by the economic loss rule.

#### 1. Breach of Contract

Viva hangs its breach of contract claim on unfounded and unsupported allegations that Lief's alleged use of both powder and granule chicken type II collagen resulted in an "adulterated" product. This claim fails for at least four reasons.

*First*, Viva alleges that its breach claim arises under Lief's failure to satisfy 21 C.F.R. § 111.70. Yet Viva fails to realize this assertion is a legal fallacy. Section 111.70 is not relevant to Lief's conduct. Viva admits to being the party responsible for establishing a specification for components or ingredients used for manufacturing dietary supplements, which is required by 21 C.F.R. § 111.70. FAC ¶ 14. The duty to assure adherence to those specifications under the regulations falls on Viva, not Lief. Thus, Viva's reliance on § 111.70 could not and does not demonstrate a failure by Lief to follow cGMPs under 21 C.F.R. Part 111 or establish that Lief manufactured adulterated products for Viva. Viva has failed to support its breach of contract claim flowing from its unsupported allegations of Lief's adulteration of chicken type II collagen. If Viva argues otherwise, it inherently raises a genuine issue of material fact.

*Second*, specifications set by Viva for the raw material "Chicken type II Collagen" for use in Lief's manufacturing of products for Viva establishes that both powder and granule forms of collagen can be used in the manufacture of collagen-containing products manufactured for Viva. *See, e.g.*, Bell Decl., Ex. 1; Counterclaim, Ex. A at 009 (Form: Powder or Granule). Viva's "New Product Request for Quote" sent to Lief states that the dosage format of the collagen was powder. *See, e.g.*, Bell Decl., Ex 3; Counterclaim Ex. C at 016. Accordingly, all of the available evidence stating that powder-form chicken type II collagen was either desired or acceptable directly conflict with Viva's unsupported allegation that Lief was required to use only granule form collagen in providing services.

Moreover, Viva sourced and purchased the chicken type II collagen via its chosen supplier, Semnl Biotechnology, which Lief was required to use in manufacturing the products for Viva. Counterclaim ¶ 9. It is undisputed that Semnl Biotechnology shipped both granule and powder forms of chicken type II collagen for use in making Viva's products. Indeed, either Viva itself is responsible for any alleged adulteration or its supplier, Semnl Biotechnology, is the responsible party for improperly supplying both powder and granule collagen to Lief. Lief simply utilized the chicken type II collagen provided by Viva under the specifications set by Viva. Thus, Lief did not materially breach any contract in using the chicken type II collagen raw ingredient it received. If Viva argues otherwise, it once again chooses to go down the path of creating facts in dispute that defeat its motion.

*Third*, even if Lief warranted that it would manufacture "Multi-Source Collagen Powder Plus-Unflavored" products (RFA No. 6; FAC ¶ 18) and Lief manufactured them using granule, powder or mixed forms of chicken type II collagen, this would not establish a breach claim as pled by Viva. As noted previously, the specification established by Viva for chicken type II collagen allowed for Lief to utilize either granule or powder chicken type II collagen (or mixtures thereof as a result). The specification set by Viva for chicken type II collagen establishes that both powder and

granule forms of the ingredient are suitable for use in manufacturing Viva's collagen-containing products. Bell Decl., Ex. 1; Counterclaim, Ex. A at 009. The two forms of chicken collagen are chemically identical. Bell Decl., Exs. 5 at pg. 1; 6 at pg. 1. Viva cannot establish that Lief manufactured any adulterated, contaminated, or otherwise faulty product, when that product was manufactured using the chicken type II collagen Viva purchased and shipped to Lief for use.

*Fourth*, under the agreement, Viva was responsible for creating product labels with the supplement facts panel as required under the Food, Drug and Cosmetics Act. However, Lief's counsel recently learned after this dispute arose that the label provided by Lief at the time misstated the amount of protein and percent of Daily Recommended Value contained in the product as required by the Act. 21 C.F.R. Part 101. As such, Viva's products were misbranded by its own actions and could not have been lawfully sold in interstate commerce. 21 U.S.C. 343(a)(1). Regardless of any purported wrongdoing by Lief, ultimately it was Viva's own actions and failures to adhere to the Food, Drug and Cosmetics Act throughout the entire business relationship that caused its products to be unsaleable.

Further, as it relates to Viva's argument regarding admissions by Lief, it should be noted that RFAs deemed admitted can also be true by virtue of multiple interpretations, although Viva attempts to rely on vague admissions to support its Statement of Uncontroverted Facts and Conclusions of Law. For example, RFA No. 9, which states that "$74,445 USD worth of Products were not saleable by Viva because they were not produced [in] accordance to Viva's specifications" can only be true based on Viva's *own* failure to adhere to the Act. Viva cannot pin any harm resulting from any alleged "unsaleability" on Lief's actions, when its actions have resulted in violations of the Act. Viva has not properly alleged and cannot ultimately prove, its claim for breach. Viva's motion for summary judgment for breach of contract should be denied.

### 2. Viva Is Not Entitled to Summary Judgment For Breach Of Warranty.

Count Two of the FAC alleges that Lief, expressly or implicitly, warranted to Lief that its work for Viva would be of "merchantable" quality. This claim fails for the same reasons discussed above. Even if Lief did intermingle or substitute powder and granule forms or chicken type II collagen, this would not, on its own, establish that Lief failed to ensure that the chicken type II collagen, sent to Lief by Viva, did meet the specification that Viva established for chicken type II collagen and therefore could not establish a failure of merchantability.

Viva cannot prevail on that claim as a matter of law because Lief was providing services to Viva for a fee. Viva's own allegations admit that this was the case: "The business relationship between the Plaintiff and the Defendant began in 2017. In general, the Plaintiff provided the Defendant with raw ingredients and packaging to manufacture collagen-containing products for Plaintiff according to Plaintiff's specifications, and Defendant would manufacture such products for the Plaintiff in exchange for a fee." FAC ¶ 14.

Neither Viva's FAC nor its summary judgment motion sets forth the statutory or other legal basis for asserting that its work was not of merchantable quality. The concept of merchantability is directed to a product, **not services**. *See, e.g., Apollo Grp. Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 (9th Cir. 1995). In the pleadings, the parties agree that Lief was providing services to Viva for a fee. FAC ¶ 14; Answer ¶ 14. It is undisputed that Viva controlled the purchase and shipping of raw ingredients to Lief for use in providing those services.

Lief was performing contract manufacturing services in return for a fee to be paid by Viva, which then sold the dietary supplements to consumers. Viva alleges that the merchantability arises from services, not a product and this claim fails as a result.

### 3. Viva's Negligence Claim Is Barred by the Economic Loss Rule.

Viva seeks to hold Lief liable for the negligent performance of alleged duties under a contract. FAC ¶¶ 37-41. The claim, however, is barred by the economic loss rule. "The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1180 (C.D. Cal. 2009) (citing *Aas v. Superior Court*, 24 Cal.4th 627, 643, 101 Cal.Rptr.2d 718, 12 P.3d 1125 (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.")). Thus, "a plaintiff suffering only economic damages may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Arena Restaurant and Lounge LLC v. Southern Glazer's Wine and Spirits, LLC*, 2018 WL 1805516, at *6 (N.D. Cal. Apr. 16, 2018) (citing *Aas*, 24 Cal.4th at 643; *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004); *see also, County of Kern v. Tyler Techs., Inc.*, 2021 WL 369588, at *6-7 (E.D. Cal. Feb. 3, 2021) (the economic loss rule is particularly applicable to "commercial activities that negligently or inadvertently go awry"); *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009) ("the fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement"). The "mere negligent breach of a contract is not sufficient basis for imposing tort liability." *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 964 (S.D. Cal. 2007) (citing *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999)). Tort damages are only permitted in contract cases where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich*, 21 Cal.4th at 552 (citation omitted); *see also, Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515 (1994).

-15- Case No. 2:20-cv-03107-RGK-AFM
LIEF ORGANICS, LLC'S MEMORANDUM OF PTS & AUTH. IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Here, Viva is seeking economic loss damages resulting from Lief's services as a contract manufacturer pursuant to a business relationship and contract. Viva's negligence claim derives solely from that relationship and the contract services provided. Granting summary judgment in Viva's favor on negligence would be error.

### 4. Viva's Attempt to Obtain Summary Judgment on Lief's Two Counterclaims Should Fail

As stated earlier, Viva's Notice of Motion and Motion does not state which counterclaim it seeks the Court to address. Dkt. No. 41 at pg. 2. Leif has asserted two separate counterclaims. Dkt. No. 23. One for breach of contract and a separate one for account stated. Counterclaim ¶¶ 6-34. Viva cannot summarily move for judgment on a Lief counterclaim without identifying which one and then expect Lief and the Court to interpret for which one Viva seeks a remedy. At the very least, Viva's motion is incomplete and therefore, improper as a motion seeking judgment on an unidentified claim. Moreover, given the fluidity and vagueness of Viva's motion, Lief's counterclaims should be left first to a jury to hear the facts.

## IV.  CONCLUSION

For all of the foregoing reasons, Viva's motion for summary judgment should be denied.

Dated:   June 21. 2021            **WILSON TURNER KOSMO LLP**

By:   /s/ *Frederick W. Kosmo, Jr.*
FREDERICK W. KOSMO, JR.
HUBERT KIM
Attorneys for Defendant and Counter-Claimant
LIEF ORGANICS, LLC