James K. Schultz, Esq. (SBN 309945)
SESSIONS, ISRAEL & SHARTLE, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:  619/296-2013
jschultz@sessions.legal

Attorneys for Plaintiff Viva Naturals, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVA NATURALS, INC., <br><br> Plaintiff <br><br> vs. <br><br> LIEF ORGANICS, LLC, <br><br> Defendant | Case No. 2:20-CV-03107-RGK-AFM <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date: July 12, 2021 <br> Hearing Time: 9:00 a.m. <br><br> Final Pretrial Conf.: August 9, 2021 <br> Trial Date: August 24, 2021 |

**A. Local Rule 7-3 Has Been Satisfied, and Even if it Has Not, There is No Prejudice and a Meet and Confer Would Have Been Futile.**

Defendant contends that counsel "never met and conferred on Plaintiff's motion for summary judgment." ECF No. 42-1, Declaration of Kevin Bell ("Bell Decl.") at ¶ 17; *see also* ECF No. 42-9, Declaration of Hubert Kim at ¶ 2. While a detailed point-by-point discussion of the motion did not occur during the conferences between counsel on May 28 and June 3, 2021, resolution of the claims and counterclaims was discussed in depth. *See* Declaration of Kalman Magyar

1

("Magyar Decl.") at ¶ 6; *accord* Bell Decl. at ¶ 16 (on May 28, 2021, counsel discussed that "if the case was not promptly resolved, the parties would proceed to trial"). Far from being a "tactical bait-and-switch," the substance of the summary judgment motion was clearly known to Defendant well before it was filed and Defendant had every opportunity to avoid the predicament it now finds itself in. ECF No. 42 ("Def.'s Memo.") at 6/20. Indeed, after the Court denied the request to extend discovery (ECF No. 40), Plaintiff demanded responses to the Requests for Admissions and documents. Magyar Decl. at ¶ 3 ("In light of the Court's denial of the request to extend the dates in this case….May I please have those long-outstanding documents no later than May 25"). No response was delivered, so Plaintiff wrote again on May 26, seeking a meet and confer. *Id*. at ¶ 4 ("I'm writing in furtherance of a meet and confer regarding the outstanding discovery from Lief….Unless we receive the discovery by end of day today…we will file a motion to compel"). Again, Defendant did not respond or attempt to meet and confer, allowing the discovery end-date to simply expire on May 27, 2021.[1] The next day, Plaintiff wrote again, making clear that a summary judgment motion will be filed. *Id*. at ¶ 5 ("Viva intends to move for summary judgment on its claims…as well as

---

[1] While Defendant describes Plaintiff's courtesies in extending the deadline to provide responses as "open-ended extensions" (Bell Decl. at ¶ 14), these extensions did come with an expiration date which Defendant ignored. The suggestion that Plaintiff "skirted the rules and civility requirements" by filing a pre-announced summary judgment motion within the time allowed by the Court is ill-considered. ECF No. 33 (setting June 10, 2021 as the motion deadline).

on the counterclaims asserted by Lief against Viva. The motion will be based on, *inter alia*, Lief's deemed admissions under Rule 36 of the Federal Rules of Civil Procedure, as well as Lief's failure to produce any documents in support of its allegations or defenses. We intend to file the motion on or before June 10, 2021, the date set for the filing of dispositive motions."). Defendant did not provide responses to the admission requests or serve documents until **after** Plaintiff filed its promised motion. *Id*. at ¶¶ 7-8.[2]

Even if the parties did not adequately meet and confer, summary judgment motions may be heard if the non-moving party suffered no (or minimal) prejudice as a result of the apparent failure to do so. *See e.g., Great Lakes Reinsur. v. ACE Am. Ins. Co.*, Case No. 2:17-cv-01199-RGK, 2018 WL 4945302, *4 (C.D. Cal. Feb. 8, 2018). The Court has also ruled on summary judgment motions when meet and confer efforts would be "futile." *Wamboldt v. Safety-Kleen Systems, Inc.*, Case No. CV-14-2610-JFW, 2014 WL 12581762, *1 at fn. 1 (C.D. Cal. Nov. 4, 2014).[3] Thus, even if Local Rule 7-3 has not been satisfied, Defendant has not shown prejudice.

---

[2] Plaintiff's counsel sent a letter to Defendant's counsel on June 14, 2021 objecting to the belated admission response and another letter on June 21, 2021 objecting to the belated document production; Defendant has not replied to either communication. *Id*. at ¶¶ 7-8.

[3] The case cited by Defendant (*Mardiros v. City of Hope*, Case No. 2:19-cv-2196-MSC-MAA (C.D. Cal. Jan. 22, 2021), Def.'s Memo. at 9/20) involved a summary judgment motion filed **before** the discovery cut-off, where the issues were such that "the parties could narrow or eliminate [them] in an adequate prefiling conference of counsel." *Mardiros* at ECF No. 121 and No. 212. The movant refiled its motion after the meet and confer, within the time allowed for filing motions. *Id*. at ECF No. 226. Clearly the circumstances are different here.

3

And based on Defendant's opposition to the motion, it is undeniable that any meet and confer would have been futile.

**B. Defendant's Admissions are Binding and Should Not Be Withdrawn.**

Defendant asks the Court to "disregard or withdraw the admissions under Rule 36(b)." *See* Def.'s Memo at 13/20. The Court may only withdraw admissions "on motion" under Rule 36(b), and Defendant's request in a brief is not a "motion."[4] This Court underscored that because Rule 36 is self-executing, a non-answering party cannot rebut the admissions and the Court cannot ignore them, even if "it finds the evidence presented by the party against whom the admission operates more credible." *Switchmusic.com, Inc. v. U.S. Music Corp.*, 416 F. Supp. 2d 812, 817 (C.D. Cal. 2006). In *Switchmusic.com*, this Court granted summary judgment, rejecting the defendants' attempt to "take any action to withdraw or amend the admissions until the filing of their Opposition to Plaintiff's Motion for Summary Judgment," finding that "Defendants **did not timely file a motion to withdraw or amend and cannot file a motion after the cut-off date**." *Id*. at 818-819, 827 [emphasis added]. The sanctions for not observing discovery end dates are severe. See *Johson v. City of Los Angeles*, Case No. 2:19-cv-00105-RGK-FFM, 2020 WL 2048619 at *2 (C.D. Cal. Feb. 25, 2020) (litigants "will pay a price for failure to

---

[4] To the extent Defendant perceives that the parties did not adequately meet and confer on Plaintiff's summary judgment motion, there is no question that Defendant has not even attempted to meet and confer on any "motion" to withdraw its admissions.

4

comply strictly with scheduling and other orders, and [ ] failure to do so may properly support severe sanctions and exclusions of evidence") (*quoting Wong v. Regents of the Univ. of Cal.,* 410 F.3d 1052, 1060 (9th Cir. 2005)).

Even if Defendant's request to withdraw could be entertained at this stage, the Court should not allow it. *De Luna v. Navarro*, Case No. ED-CV-18-2261 DMG, 2019 WL 6139920, *2 (C.D. Cal. Sep. 6, 2019) ("Rule 36(b) is permissive, and in deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits"). Like Plaintiff, the *De Luna* plaintiff based its summary judgment motion "almost entirely on the matters admitted"; those admissions were sought to be withdrawn after the deadline to respond expired, after discovery ended, and only after the plaintiff filed its motion. While the Court found that "[p]ermitting Defendants to withdraw their admissions would promote presentation on the merits given that Plaintiff bases his MSJ almost entirely on the matters admitted," it declined to permit the withdrawal "because Defendants have not shown any good cause for their unreasonable delay in addressing the RFAs." *Id.* at *2.[5] In any event, "in order for the Court to permit

---

[5] Not even a mistaken assumption that an extension of time to respond would be approved, nor an internal calendaring error, rose to the level of "good cause." *Id*. at *3. Defendant has not even attempted to show "good cause" here, nor could it.

5

Defendants to seek relief from their admissions, it would first have to amend the scheduling order to allow for further motion practice." *Id*. As this Court has declined to do so for "no showing of good cause" (ECF No. 40), the admissions cannot be withdrawn.

### C. Defendant Misconstrues Plaintiff's Manufacturing-Related Claims.

Plaintiff's case does not depend on whether the products Defendant manufactured were "adulterated." *Contra* Def.'s Memo. at 11/20 and 15/20. There is no claim alleging "adulteration", which is mentioned nowhere in Plaintiff's motion.[6] Defendant also misinterprets its documents, to the extent they can even be considered.[7] While Defendant contends that Plaintiff's "New Product Request for

---

[6] The only passing reference to a regulation is in Statement of Uncontroverted Fact ("UF") No. 8, reflecting Defendant's admission that it "did not note a deviation with the Plaintiff's specifications pursuant to cGMP requirements under 21 C.F.R. § 111.70, which requires manufacturers to comply with ingredient identity specifications." ECF No. 41-2 at 3/5.

[7] Even though they are not helpful to Defendant, the Court should disregard all of the documents attached to the Bell Declaration. Because Defendant did not produce documents during discovery, it cannot now introduce documents "on a motion, at a hearing, or at a trial." *Weinberg v. Whatcom County*, 241 F.3d 746, 750-751 (9th Cir. 2001) (court may not consider information submitted in opposition to a summary judgment motion if such information was not disclosed prior to the discovery deadline). Moreover, the first three documents (Exhs. 1- 3) are attachments from Defendant's pleading which cannot be used to oppose a summary judgment motion. *J&J Sports Productions, Inc. v. Scott*, Case No. CV-16-00776-WDK-PLA, 2018 WL 6131578, *1 (C.D. Cal. Mar. 13, 2018) ("nonmoving party must not simply rely on the pleadings" in opposing summary judgment). The other three documents (Exhs. 4-6) were attachments to a settlement communication by Plaintiff (Magyar Decl. ¶ 9), and while Rule 408 of the Federal Rules of Evidence does not preclude the admissibility of attachments to settlement communications if they are not a "statement", such information can only be introduced if it is "otherwise discoverable." *Coach, Inc. v. Citi Trends, Inc.*, Case No. CV-17-4775-DMG, 2019 WL 6354367, *7 (C.D. Cal. Oct. 23, 2019). Given Defendant's failure to produce any documents during discovery, whatever it seeks to use now has never been made "discoverable."

Quote" indicates that the "dosage format of the collagen was powder" (Def.'s Memo. at 16/20), the document simply reflects the form of a proposed **finished** product, which was obviously powder.  Defendant misses the point that the raw material **chicken** collagen going into the finished formula was to be granulated and not powdered; the wrong form (or a mix of the two) was used, as reflected in other documents sought to be offered by Defendant, consistent with its admissions.  *See* Bell Decl. Ex. 5 at 2/4 ("we cannot definitively state that PWD and GRAN were separated completely or that one form was not used in place of another").

      With respect to Plaintiff's breaches of contract and warranty[8] claims, the uncontroverted and admitted evidence remains that the parties entered into an agreement for the manufacture of finished products, which the Defendant warranted would be of merchantable quality.  UF Nos. 3 and 4.  Defendant knew that there were two forms of chicken collagen and that only the granular form was to be used in the relevant products' manufacture.  UF No. 6.  The specification for these products required that only the granular form of chicken collagen be used, and not the powdered form of chicken collagen or a mix of the two.  UF No. 5.  Defendant

---

[8] Defendant asserts that the breach of warranty of merchantability does not apply on the basis that it was providing "services" to Plaintiff rather than a "product." Def.'s Memo. at 18/20. This is an incorrect description of the parties' relationship with respect to the manufacture of finished products, which are "goods" under California Commercial Code § 2105(1), particularly given that Defendant's own recitation of the parties' relationship that "Defendant would manufacture such products for the Plaintiff in exchange for a fee". Def.'s Memo. at 7/20. In any event, the Defendant has admitted that it warranted to the Plaintiff that the finished product it was manufacturing for Plaintiff would be of merchantable quality. UF No. 4.

used the incorrect form of chicken collagen and manufactured the products using the powder form of the chicken collagen, or a mix of the powder and granular chicken collagen rather than the granular form, and admitted so in writing. UF No. 7. Defendant has admitted that $74,445 worth of products were not saleable because they were not produced according to Plaintiff's specifications. UF No. 9. This is pure and simple – and admitted – breach of contract and breach of warranty.

Defendant's response on the negligence claim relies solely on the economic loss rule. Def.'s Memo. at 19/20. Plaintiff's advancement of the alternative claim for negligence on summary judgment was only necessitated because the Defendant had denied that the parties had an agreement regarding the production of goods and storing of inventory. *See* Am. Cplt. ¶ 26 (ECF No. 9), denied in Answer ¶ 26 (ECF No. 23). To the extent the Defendant now takes the position that the parties did have such an agreement, Plaintiff concedes it cannot recover damages for negligence under the economic loss rule on this motion.[9]

**D. Defendant Does Not Contest Plaintiff's Inventory-Related Claims.**

Defendant does not address any aspects of Plaintiff's inventory-related claims in its Opposition Memorandum. Nor can it, as Defendant has admitted: (i)

---

[9] Defendant's actions constitute negligence because Defendant owed a legal duty of care to manufacture products in accordance with Plaintiff's specifications (UF Nos. 1-5); Defendant has admitted that it breached that duty by using the wrong form of chicken collagen in the products at issue (UF No. 7); and Defendant has admitted that $74,445 worth of products were not saleable because they were not produced consistent with Plaintiff's specifications (UF No. 9).

"That in the course of the relationship between Life [sic] and Viva, Viva sent raw ingredients, packaging labels, and other materials directly to Lief"; (ii) "That Lief was responsible for managing the inventory provided by Viva in exchange for a fee"; (iii) "That Lief cannot account for $31,677 USD of Viva's inventory"; (iv) "That Lief is holding about $203,362 USD of Viva's inventory, excluding the $74,445 USD value of the Product in dispute and the inventory of $31,677 USD, to which Lief has not given Viva access"; and (v) "That despite previous requests and demands, Lief has not released this inventory to Viva." ECF No. 41-3, Declaration of James K. Schultz Ex. A at 16/55 (Request for Admissions at 10-14). All Defendant does with this uncontroverted evidence is reference Exhibits 5 and 6 of the Bell Declaration in its Statement of Genuine Disputes of Material Fact (ECF No. 42-10 at 8-10/12). To the extent those documents are properly before the Court (see fn. 7 supra), they do nothing to undermine the admitted facts that the parties had an agreement under which Plaintiff would send inventory directly to Defendant; Defendant was responsible for managing the inventory in exchange for a fee; and $31,677 of the inventory cannot be accounted for. The rest (valued at $203,362) belongs to Plaintiff, is being held by Defendant, and has not been released, constituting a contractual breach and negligence. A more straightforward case of breach would be hard to imagine.

9

### E. Plaintiff is Entitled to Summary Judgment on the Counterclaims.

Defendant has never produced evidence before the discovery cut-off supporting its claims pertaining to misconduct by Plaintiff alleged in the Counterclaim, or what damages were suffered by Defendant, or how those damages were to be calculated. *See* UF No. 16 and Pl.'s Memo. (ECF No. 41) at 4. There is a complete lack of evidence supporting Defendant's claims, and none has been presented by Defendant in its Opposition. But even if Defendant did produce such evidence, the Counterclaim is predicated on the allegation that "Lief performed all of its contractual duties with respect to the agreement with Viva" (ECF No. 23 at ¶ 22) which, for the reasons already addressed, is not accurate and,, the Counterclaim should be dismissed. If the proposed Judgment submitted by Plaintiff (ECF No. 41-4) did not already make it obvious to Defendant, Plaintiff seeks a dismissal of the Counterclaim in its entirety, as to both counts.

### F. Conclusion

For the reasons herein and in its moving papers, Plaintiff respectfully requests that the Court grant its motion for summary judgment in its favor, award damages of $309,384, and dismiss Defendant's Counterclaim with prejudice.

Dated: June 25, 2021                Respectfully submitted,

                                    SESSIONS, ISRAEL & SHARTLE, L.L.P.

                                    /s/James K. Schultz
                                    James K. Schultz
                                    Attorneys for Plaintiff Viva Naturals, Inc.