WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
402 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

Attorneys for Defendant and Counter-Claimant
LIEF ORGANICS, LLC

ARNALL GOLDEN GREGORY LLP
Kevin M. Bell (admitted pro hac vice)
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
(202) 677-4906
(202) 677-4907 (fax)
E-mail: kevin.bell@agg.com

Attorneys for Defendant and Counter-Claimant
LIEF ORGANICS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Viva Naturals, Inc.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Lief Organics, LLC,<br><br>　　　　Defendant.<br><br>And Related Counterclaims | Case No. 2:20-cv-03107-RGK-AFM<br><br>**LIEF ORGANICS, LLC MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>First Amended<br>Complaint Filed: June 17, 2020<br><br>District Judge: Hon. R. Gary Klausner<br>Courtroom: 850, 8th Floor<br><br>Magistrate Judge: Hon. Alexander F. MacKinnon<br>Courtroom: #780, 7th Floor<br><br>Trial Date: August 24, 2021<br><br>Case No. 2:20-cv-03107-RGK-AFM<br>2:20-cv-03107-RGK-AFM |

# **TABLE OF CONTENTS**

I.   FACTS .................................................................................................................. 1

    A.   Lief's Counterclaims ................................................................................ 2

II.   THE PARTIES' CLAIMS AND DEFENSES ................................................... 3

    A.   Viva's Claims ........................................................................................... 3

        Claim 1: Breach of Contract ................................................................... 3

        Claim 2: Breach of Warranty .................................................................. 3

        Count 3: Negligence ................................................................................ 4

    B.   Lief's Defenses & Counterclaims ........................................................... 4

        a.   Lief's Defenses ............................................................................... 4

        b.   Lief's Affirmative Defenses .......................................................... 5

            i.   Failure to Mitigate ................................................................. 5

            ii.   Viva's Claims are Preempted by Regulation ....................... 6

            iii.   Viva's Negligence Claim is Barred by Economic Loss Rule ............................................................................. 6

        c.   Lief's Counterclaims ..................................................................... 6

            i.   Count I: Breach of Contract .................................................. 6

            ii.   Count II: Account Stated ...................................................... 7

III.   KEY EVIDENTIARY ISSUES .......................................................................... 8

    a.   Lief seeks to exclude all Viva evidence related to claims of adulteration and regulatory matters. ............................................................ 8

    b.   Lief seeks to preclude Viva from offering any evidence of a final product specification. ........................................................................ 8

    c.   Lief seeks admission of evidence that is contrary to the requests for admission submitted with Viva's motion for summary judgment. ................................................................................................. 9

IV.   BENCH TRIAL ................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Amarin Pharma, Inc. v. Int'l Trade Comm'n*
   923 F.3d 959 (Fed. Cir.), *cert. denied*, 140 S. Ct. 642 (2019) ............................. 6

*Coleman v. Medtronic, Inc.*
   223 Cal.App.4th 413 (Cal. Ct. App. 2014) .......................................................... 4

*Luxul Tech. Inc. v. Nectarlux, LLC*
   78 F. Supp. 3d 1156 (N.D. Cal. 2015) ................................................................. 7

*POM Wonderful LLC v. Coca-Cola Co.*
   573 U.S. 102 (2014) ............................................................................................. 6

*Reichert v. Gen. Ins. Co. of Am.*
   68 Cal. 2d 822 (1968) ..................................................................................... 3, 6

*Shaffer v. Debbas*
   17 Cal. App. 4th 33, 21 Cal. Rptr. 2d 110 (1993) .............................................. 5

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*
   660 F.Supp.2d 1163 (C.D. Cal. 2009) ................................................................. 6

**Statutes**

21 U.S.C. § 393(b)(2)(A) ............................................................................................ 6

California Commercial Code § 2313(1)(a) ................................................................. 3

Food, Drug and Cosmetic Act .......................................................................... 4, 6, 8, 9

Pursuant to Local Rule 16-4, Defendant/Counter-claimant Lief Organics, LLC ("Lief") respectfully submits the following Memorandum of Contentions of Fact and Law.

## I. FACTS

Viva Naturals, Inc. ("Viva") develops and sells dietary supplement products. (*See* Counterclaim, Dkt. No. 23 at ¶ 7 and Dkt. No. 42-10, Lief's Statement of Genuine Disputes of Material Fact ("SGD").)[1] Lief is a full-service manufacturer of dietary supplements. (Counterclaim, Dkt. No. 23 at ¶ 6 and SGD.) In 2017, the parties entered into a relationship by which Lief would manufacture products for Viva including the product at issue, which was a multi-source collagen powder product (the "Product"). (First Amended Complaint, Dkt. No. 9 at ¶ 14.) In the course of their relationship, Viva sent raw ingredients purchased from a third-party, packaging labels, and other materials directly to Lief to utilize in manufacturing products for Viva. (Counterclaim, Dkt. No. 23 at ¶ 9 and SGD.)

Lief contends that it followed all Current Good Manufacturing Practices and manufactured all products for Viva in accord with any relationship or agreement that may have existed. (SGD Nos. 5, 9; Lief's Counterclaim, Dkt. No. 23 at ¶ 18.) Viva never supplied nor identified any product specification or contractual obligation requiring Lief to use granule chicken collagen instead of powder chicken collagen as Viva has asserted. In fact, Viva is the party that independently purchased the powder and granule chicken collagen products through a Chinese supplier, Hainan Semnl Biotechnology Co., Ltd. ("Smnl Biotechnology"), both of which Viva had shipped directly to Lief. (Dkt. No. 23-1.) The raw ingredient specification for chicken collagen from Viva's chosen supplier expressly allowed for the use of both the powder and granule form of chicken type II collagen to be used in the manufacture of Viva's collagen-containing products. *Id*. at 9. Therefore, Lief satisfied all regulatory

---

[1] Viva has moved for summary judgment in this matter (Dkt. No. 41), which Lief has opposed (Dkt. No. 42).

-1-    Case No. 2:20-cv-03107-RGK-AFM

LIEF ORGANICS, LLC MEMO OF CONTENTIONS OF FACT AND LAW

best practices and satisfied any obligations owed to Viva to manufacture a finished good. As such, Viva is not owed the $74,445 in damages it seeks.

Lief further contends that Viva has not and cannot prove that Lief owed any duty to manage inventory in the manner Viva asserts. The portion of the raw ingredient inventory—for which Viva seeks $31,677 in damages—is housed in a non-Lief facility, to which Viva has had access without any interference by Lief. Lief has never denied access to Viva for it to reclaim its unused raw ingredient inventory. (SGD Nos. 12-14.) Moreover, Viva seeks additional damages of approximately $200,000 related to other raw ingredients it made Lief store until its recent expiration. Here again, Viva never attempted to reclaim or take possession of the inventory at issue. *See id*. In addition, to the extent that any raw material inventory is now unusable, this is only a result of Viva's filing of this lawsuit and its refusal to take possession of the inventory at issue that it purchased and forced Lief to hold. *See id*. The inventory at issue was saleable at the outset of this litigation, and to the extent that they it is no longer saleable, this is solely a result of Viva's actions, inactions, and failure to mitigate damages.

### A. Lief's Counterclaims

Lief has counterclaimed against Viva for breach of contract and account stated. Lief claims that Viva breached any agreement that existed between the parties by failing to pay for services rendered and products manufactured, including finished product and storage fees. (Dkt. No. 23 at 6-7.) Lief made finished products for Viva. *Id*. Viva never supplied a product specification to Lief that would require the use of powder versus chicken collagen. *Id*. The product that Viva had shipped to Lief through Viva's preferred supplier contained both powder and granule chicken collagen. *Id*. None of Viva's requests for the manufacturing of goods specified the form of chicken collagen that was to be used. *Id*. In fact, documentation supplied by Viva shows that powder and granule chicken collagen were interchangeable and chemically indistinct. *See,* Dkt. No. 23-1 at 8-9. Further, a "New Product Request

for Quote" that Viva provided states only that "Grade A chicken collagen" be used as the ingredient and is silent to any powder or granule requirement. (Lief's Counterclaim, Dkt. No. 23 at ¶ 17.) As such, the finished products that Lief manufactured for Viva were made in accordance with any contractual obligations that Lief owed to Viva. *Id* at ¶ 18. Viva has not paid Lief for the manufacturing of those products and owes Lief approximately $12,850 in damages not including other additional unpaid invoice amounts. (SGD Nos. 5, 9; Lief's Counterclaim, Dkt. No. 23 at ¶ 18.) Lief is also entitled to storage fees of at least $50,400 for the costs (which have continued to accumulate during the pendency of this litigation) of storing Viva's finished product and unused raw ingredient inventory that Viva purchased, had shipped to Lief and intentionally refused to retake possession of because of this dispute. (Lief's Counterclaim, Dkt. No. 23 at ¶ 20.)

In addition, Viva never objected to any invoices issued by Lief and accepted all invoices issued by Lief. *Id*. at 8. By accepting and not objecting to these invoices, Viva agreed the amount stated was the correct amount owed to Lief for the services rendered. *Id*. Viva owes Lief damages for the account stated.

## II.   THE PARTIES' CLAIMS AND DEFENSES

### A.   Viva's Claims

**Claim 1: Breach of Contract**

Elements: Viva has the burden of proving: (1) Viva and Lief had a valid contract; (2) Viva performed its obligations under the contract; (3) Lief's breach; and (4) Viva suffered damage as a result.

Source: *Reichert v. Gen. Ins. Co. of Am.,* 68 Cal. 2d 822, 830 (1968).

**Claim 2: Breach of Warranty**

Elements: Viva has the burden of proving: (1) Lief warranted to Viva that the Products would be of merchantable quality; (2) Viva relied on this warranty; and (3) Lief's breach of its warranty caused proximal damages to Viva.

Source:  California Commercial Code § 2313(1)(a).

**Count 3: Negligence**

<u>Elements</u>: Viva has the burden of proving: (1) A legal duty of care was owed by Lief to Viva; (2) Lief breached their duty of care; (3) Viva suffered injury caused by Lief's breach of their duty; and (4) damages were suffered by Viva.

<u>Source</u>: *Coleman v. Medtronic, Inc.,* 223 Cal.App.4th 413 (Cal. Ct. App. 2014).

**B.      Lief's Defenses & Counterclaims**

    **a.      Lief's Defenses**

Lief denies all of Viva's claims and Viva cannot meet the requirements for breach of contract, breach of merchantability, or negligence.  Lief denies any wrongdoing in its manufacturing of products for Viva.  Specifically, Lief denies that it failed to adhere to any product specification because Viva never provided any product specification that Lief was to satisfy.  Also, the raw material specification Viva supplied indicated that powder and granule products were interchangeable and chemically indistinct.  Thus, Viva cannot prove any facts that would show that Lief did not adhere to a specification and Viva cannot prove any of its claims, as a result.

Moreover, Viva cannot establish any facts related to any claims of adulteration under the Food, Drug and Cosmetic Act or other Food and Drug Administration ("FDA") regulation as stated in their complaint. (First Amended Complaint, Dkt. No. 9 at ¶ 14.) Viva cannot assert such claims because the FDA has exclusive jurisdiction over the enforcement of the provisions of the Food, Drug and Cosmetic Act.  Viva also cannot prove any facts or claims related to product adulteration because it has neither provided any evidence showing adulteration from a credible expert or source, nor has it provided any contract that obligated Lief to adhere to any quality control obligations that form the basis of its claims.  Consequently, Viva cannot establish any facts showing that any products Lief manufactured were adulterated or that Lief failed to adhere to any Current Good Manufacturing Practices.  Thus, Viva cannot establish any facts that show that the product at issue was unsaleable due to any

breach or negligence by Lief and cannot prove any liability establishing the damages Viva seeks.

For these reasons, and others to be elucidated during trial testimony, Viva cannot prove that Lief acted in way that constitutes breach of contract, breach of merchantability, or negligence.

### b. Lief's Affirmative Defenses

#### i. Failure to Mitigate

Elements: "A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." Thus, Lief must prove that it took reasonable steps to mitigate its damages.

Source: *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41, 21 Cal. Rptr. 2d 110, 114 (1993), as modified (July 13, 1993).

Summary & Evidence: Viva failed to take any action that would mitigate damages. Once the parties discovered that powder chicken collagen may have been used in place of granule chicken collagen, Viva made no effort to resolve the situation, but simply claimed that the relevant products and raw ingredients were unsaleable. However, in all likelihood, the allegedly adulterated unflavored product at issue could have been reformulated (or simply had chocolate powder added to it) or properly categorized to be saleable or used in saleable finished products—a solution that would have obviated this litigation longer before it began. Viva also could have aided in the identification and classification of the powder and granule products that Viva purchased and had delivered to Lief, which could have been used for unflavored and chocolate-flavored products as desired. As a result of Viva's failure to mitigate, Viva cannot prove that it is owed the amount of damages it seeks related to manufacturing. Moreover, the majority of Viva's claim to damages revolves around the cost of unused, raw ingredients which they intentionally left at Lief's facility, instead of retrieving the materials.

### ii. Viva's Claims are Preempted by Regulation

<u>Elements</u>: The FDA is exclusively tasked with enforcement of violations of the Food, Drug, and Cosmetic Act.

<u>Source</u>: 21 U.S.C. § 393(b)(2)(A); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014); *Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 968 (Fed. Cir.), *cert. denied*, 140 S. Ct. 642 (2019).

<u>Summary & Evidence</u>: Viva's claims are almost entirely premised on allegations of adulteration under regulations of the Food, Drug, and Cosmetic act or regulations for which the FDA has exclusive enforcement over. As such, Viva cannot prevail or assert any claims, or bases for such claims, and Viva's claims must fail as a result.

### iii. Viva's Negligence Claim is Barred by Economic Loss Rule

<u>Elements</u>: "The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages."

<u>Source</u>: *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1180 (C.D. Cal. 2009).

<u>Summary & Evidence</u>: If a valid agreement is found that supports Viva's claims for breach of contract, Viva cannot also recover for negligence because Viva would be recovering for a tort claim in addition to the corresponding contractual claim, which is barred by the economic loss rule.

### c. Lief's Counterclaims

### i. Count I: Breach of Contract

<u>Elements</u>: Lief has the burden of proving: (1) Viva and Lief had a valid contract; (2) Lief performed its obligations under the contract; (3) Viva's breach; and (4) Lief suffered damage as a result.

<u>Source</u>: *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

///

Summary & Evidence: Viva and Lief entered into an agreement whereby Lief was to manufacture chicken collagen products. Lief manufactured chicken collagen products in accordance with any agreement that existed between the parties and all relevant regulatory requirements. Although Lief met all of its obligations and manufactured the requested products for Viva, Viva has not paid Lief for the services rendered. Lief has been harmed in the amount of approximately $12,850 in damages.

### ii.     Count II:  Account Stated

Elements: Lief has the burden of proving: (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due.

Source: *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1176 (N.D. Cal. 2015).

Summary & Evidence: Viva and Lief entered into an agreement and had an ongoing relationship whereby Lief was to store raw ingredients and related materials that Viva had shipped to Lief for use to manufacture chicken collagen products for Viva. Lief manufactured chicken collagen products in accordance with any agreement that existed between the parties and all relevant regulatory requirements. Lief has stored the finished products at issue, the raw ingredients at issue, along with other items such as packaging materials. Viva accepted and did not object to any of the invoices relevant to these transactions and thereby promised to the pay the stated amount. In connection with these services, Viva owes Lief storage fees of at least $50,400 for storing Viva's inventory and finished product, and other unpaid invoice amounts, and storage fees that continue to accumulate.

///
///
///
///

### III. KEY EVIDENTIARY ISSUES

Lief has filed three motions *in limine*. They are summarized as follows.

### a. Lief seeks to exclude all Viva evidence related to claims of adulteration and regulatory matters.

Lief has moved to exclude any and all evidence of or argument, assertion, or reference to adulteration under the Food, Drug, and Cosmetic Act and any FDA regulatory violations by Lief in performing any work for Viva. (Dkt. No. 56). This dispute is about dietary supplements and chicken collagen products to be used in supplements. Viva claims that the products Lief manufactured for Viva and Viva's raw ingredients stored at Lief's warehouse were adulterated, not made in accordance with regulations (such as current Good Manufacturing Practices), or otherwise made in contravention of the Food, Drug, and Cosmetic Act.

However, the Court should exclude evidence supporting or related to these issues for at least two reasons. First, violations of the Food, Drug, and Cosmetic Act are enforced by the FDA, which has exclusive jurisdiction of the alleged violations. There is no private right of action to the alleged violations. Second, Viva has not identified any experts (and actually agreed not to rely on any expert testimony) that could testify to the facts necessary to substantiate these allegations. Viva cannot offer any reliable testimony about regulatory issues or Lief's alleged violations of any regulations. For at least these reasons, and those set forth in Lief's motion *in limine*, the Court should exclude any evidence or argument related to any of Viva's FDA or other regulatory assertions.

### b. Lief seeks to preclude Viva from offering any evidence of a final product specification.

Lief has asked this Court to preclude Viva from arguing, citing, providing, identifying, or referencing a specification for the product at trial. (Dkt. No. 57.) Viva's trial exhibit list does not contain any specification for the relevant product at issue. Viva has never identified any product specification for which Lief was to

adhere to, and which would be necessary to form the basis of the breach claim Viva asserts. It would be unfairly prejudicial for Viva to simply claim it provided a specification to Lief and compare the purported requirements of a specification and the contract manufacturing services Lief provided to Viva. For at least this reason, and those set forth more fully in Lief's motion *in limine*, Lief moves to preclude Viva from introducing evidence of a product specification. *Id*.

   **c. Lief seeks admission of evidence that is contrary to the requests for admission submitted with Viva's motion for summary judgment.**

  Lief moved for a motion *in limine* (Dkt. No. 58) to admit any evidence of or argument, assertion or reference contrary or related to the Requests for Admission submitted with Viva's Motion for Summary Judgment (Dkt. No. 41-3 at 15-16, "RFAs"). The Court should allow argument and admit evidence presented by Lief at trial that is contrary or otherwise related to the RFAs and preclude Viva from moving to strike or preclude Lief's presentation of such evidence.

  The Court should allow Lief to present evidence related to the RFAs, which may contradict those RFAs because the presentation of this evidence is imperative to determining the merits of the dispute. Here, the RFAs leave significant gaps in the factual bases of Viva's alleged claims. Permitting Viva to restrict the evidence and testimony in this case would severely limit the presentation of the merits of this dispute, particularly given that the RFAs are internally inconsistent, contradicted by the plain evidence of the trial exhibits identified by Viva that it intends to use at trial, the allegations contained in its First Amended Complaint (Dkt. No. 9), and Lief's Answer to First Amended Complaint and Counterclaim (Dkt. No. 23, e.g., ¶ 5). For these reasons, and those set forth more fully in Lief's motion *in limine*, the Court should allow Lief to present evidence contrary or related to Viva's RFAs. (Dkt. No. 58.)

///

### IV. BENCH TRIAL

The parties have both demanded a jury trial and have not agreed to jointly rescind that demand. To the extent that Viva seeks to ask the Court to submit the case to a bench trial, Lief retains all rights for a jury trial and does not waive any related objections.

Dated: July 19, 2021

Respectfully submitted,

/s/ Kevin M. Bell
Kevin M. Bell (admitted pro hac vice)

ARNALL GOLDEN GREGORY LLP
Kevin M. Bell (admitted pro hac vice)
1775 Pennsylvania Avenue NW, Suite 1000
Washington, DC 20006
(202) 677-4906
(202) 677-4907 (fax)
E-mail: kevin.bell@agg.com

Attorneys for Defendant and Counter-Claimant
LIEF ORGANICS, LLC

WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
402 West Broadway, Suite 1600
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Contentions of Law and Fact were served on counsel of record on July 19, 2021.

/s/ *Kevin M. Bell*

Kevin M. Bell (admitted pro hac vice)